IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JOANNE TROESCH and IFEOMA NKEMDI, individually and on behalf of themselves and the class they seek to represent,<br><br>        *Plaintiffs*,<br>  v.<br><br>CHICAGO TEACHERS UNION, Local Union No. 1, American Federation of Teachers; and the BOARD OF EDUCATION OF THE CITY OF CHICAGO, a unit of local government of the State of Illinois;<br><br>        *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 20-cv-2682<br><br><br><br>Judge |

# COMPLAINT
## FOR INDIVIDUAL AND CLASS RELIEF
## FOR VIOLATION OF CIVIL RIGHTS

Come now the Plaintiffs, JOANNE TROESCH and IFEOMA NKEMDI, individually and on behalf of themselves and the class they seek to represent, and complain of the Defendants, CHICAGO TEACHERS UNION, Local Union No. 1, American Federation of Teachers; and the BOARD OF EDUCATION OF THE CITY OF CHICAGO, a unit of local government of the State of Illinois; and of each of them, and say:

### INTRODUCTION

1. On June 27, 2018, the Supreme Court held it unconstitutional for the government to deduct union dues or fees from public employees' wages unless the

government can prove the employee waived his or her First Amendment right not to subsidize the union's speech. *Janus v. AFSCME, Council* 31, 138 S. Ct. 2448, 2486 (2018). The Chicago Teachers Union and Board of Education of the City of Chicago are violating the First Amendment by prohibiting employees from stopping the deduction and collection of union dues or fees from their wages except during an August escape period and by seizing union dues or fees from the wages of employees who do not consent to subsidizing the union and its speech. Plaintiffs, on behalf of themselves and a class of similarly situated employees, seek declaratory judgment, injunctive relief, nominal damages, and compensatory damages for Defendants' violation of employees' First Amendment rights.

## PARTIES

2. Plaintiffs Joanne Troesch and Ifeoma Nkemdi reside in Cook County, Illinois.

3. Defendant Chicago Teachers Union, Local Union No. 1, American Federation of Teachers ("CTU") is a labor union whose offices are located at 1901 West Carroll Avenue, Chicago, Illinois 60612.

4. Defendant Board of Education of the City of Chicago ("Board") is a municipal corporation that can be sued in its own name. *See* 105 ILCS 5/34-2.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case under 28 U.S.C. § 1331, because it arises under the United States Constitution, and under 28 U.S.C. § 1343, because Plaintiffs seek relief under 42 U.S.C. § 1983. This Court has the authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief based thereon.

6. Venue is proper under 28 U.S.C. § 1391 because the Defendants' offices are located in this judicial district, the Plaintiffs reside in this judicial district, and the events giving rise to the claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

7. Section 11.1 of Illinois' Educational Labor Relations Act ("IELRA"), 115 ILCS 5/11.1 (effective Dec. 20, 2019), governs union dues deductions made by the Board and CTU.

8. Section 11.1(a) of the IELRA mandates that: "[e]mployers shall make payroll deductions of employee organization dues, initiation fees, assessments, and other payments for an employee organization that is the exclusive representative. Such deductions shall be made in accordance with the terms of an employee's written authorization and shall be paid to the exclusive representative." 115 ILCS 5/11.1(a). Section 11.1(b) further requires that "[u]pon receiving written notice of the authorization, the educational employer must commence dues deductions as soon as practicable, but in no case later than 30 days after receiving notice from the employee organization." *Id*.; *see also id*. at 5/11.1(e).

9. Section 11.1 of the IELRA authorizes restrictions on employees revoking dues deduction authorizations. Section 11.1(a) states that:

> There is no impediment to an employee's right to resign union membership at any time. However, notwithstanding any other provision of law to the contrary regarding authorization and deduction of dues or other payments to a labor organization, the exclusive representative and an educational employee may agree to reasonable limits on the right of the employee to revoke such authorization, including a period of irrevocability that exceeds one year. An authorization that is irrevocable for one year, which may be automatically renewed for successive annual periods in accordance with the terms of the authorization, and that contains at least an annual 10-day period of time during which the educational employee may revoke

the authorization, shall be deemed reasonable.

Section 11.1(c)(1) further requires that educational employers, such as the Board, enforce restrictions on revoking dues deductions by providing that "[d]eductions shall remain in effect until: (1) the educational employer receives notice that an educational employee has revoked his or her authorization in writing in accordance with the terms of the authorization."

10. The Board and CTU are parties to a collective bargaining agreement effective from July 1, 2019 to June 30, 2024 ("2019–24 CBA"). The Board and CTU were parties to a prior collective bargaining agreement effective from July 1, 2015 to June 30, 2019 ("2015–19 CBA"). The 2019–24 CBA and 2015–19 CBA are collectively referred to as the "CBAs."

11. The CBAs govern or governed the employment terms of roughly 24,000 teachers and other school personnel employed by the Board each year. This includes Plaintiffs Joanne Troesch and Ifeoma Nkemdi, whom the Board employs.

12. The CBAs contain identical "dues checkoff" clauses at Section 1-6 that state:

1-6. Dues Checkoff. The BOARD shall deduct from the pay of each bargaining unit employee from whom it receives an authorization to do so the required amount of fees for the payment of UNION dues. Such fees, accompanied by a list of persons from whom they have been deducted and the amount deducted from each and by a list of persons who had authorized deductions and from whom no deduction was made and the reason therefore, shall be forwarded to the UNION office no later than ten work days after such deductions were made. Such lists shall be organized by school or the applicable unit. Any bargaining unit employee may terminate the dues check off during August by submitting written notice to the BOARD and the UNION.

13. The 2015–19 CBA also contained a "fair share clause" at Section 1-8 that mandated all nonmembers of CTU who were subject to the CBA "shall pay to the UNION each month their fair share of the costs of the services rendered by the UNION

that are chargeable to non-members under state and federal law." 2015–19 CBA, § 1-8.1. The Board directly deducted these compulsory fees from the wages of nonmembers. *Id*. § 1-8.3. On information and belief, the Board and CTU stopped enforcing Section 1-8 against employees in July 2018.

    14.    In September 2017, Troesch and Nkemdi signed a form attached as Exhibit A and incorporated here. The form separately authorizes (i) membership in CTU; (ii) for the Board to deduct union dues from wages; and (iii) for the Board to deduct contributions from CTU's Political Action Committee from wages. Plaintiffs Troesch and Nkemdi signed the membership and dues deduction portions of the form. *See* Ex. A.

    15.    On information and belief, the form(s) the Board and CTU currently use, and have used during relevant times, to authorize Board deductions of union dues or fees from employees in the proposed classes are identical or like the forms that Plaintiffs signed.

    16.    The Board and CTU's form does not restrict when signatories can resign their membership in CTU or stop the Board from deducting contributions for CTU's Political Action Committee. The form does restrict when a signatory can stop dues deductions, stating in pertinent part:

> During my employment, I voluntarily authorize and direct my Employer to deduct from my pay each pay period, regardless of whether I am or remain a member of the Union, an amount equal to the dues and assessments certified by the Union, and to remit such amount monthly to the Union. This authorization and direction shall become revocable by providing written notice to the Union by the United Postal Service postmarked between August 1 and August 31. I understand that signing this card is not a condition of my employment.

    17.    This restriction will be called the "August escape period."

    18.    The Board and CTU's form does not notify potential signatories that they

have a constitutional right not to financially support the CTU or state that a signatory agrees to waive his or her constitutional right.

19. Troesch and Nkemdi did not know they had a constitutional right not to financially support the CTU until the fall of 2019, when they both conducted research on how to continue working during a teachers' strike, which occurred in October 2019.

20. On June 27, 2018, the Supreme Court in *Janus* held that public employees have a right under the First Amendment not to subsidize a union and its speech. 138 S. Ct. at 2468.

21. Troesch and Nkemdi sought to exercise their First Amendment rights under *Janus* in October 2019 by sending letters to the Board and CTU that notify the Defendants that they resign their membership in CTU and do not authorize the Board to deduct union dues or fees from their wages. These letters are Exhibit B and incorporated here.

22. The Board did not respond to Troesch's and Nkemdi's letters.

23. CTU responded by letter on November 15, 2019 to Troesch's and Nkemdi's resignation and revocation letters respectively, which are Exhibit C and incorporated herein. CTU implicitly acknowledged Troesch's and Nkemdi's resignations of membership, but explained that the Board's deduction of union dues from their wages will continue until September 1, 2020 pursuant to the August escape period restriction. *See* Ex. C.

24. In letters dated March 9, 2020, CTU notified Troesch and Nkemdi that they could not rejoin the union unless they pay a fine to CTU for allegedly violating CTU's internal strike policy and that "[i]n accordance with the membership application form

which you signed, your dues authorization will be revoked during the next drop period which is in August 2020." These letters are attached as Exhibit D and incorporated herein.

25. Since early November 2019 and continuing to date, the Board has deducted and CTU has collected union dues or fees from Troesch and Nkemdi's wages over their objections and in violation of their First Amendment right to refrain from subsidizing CTU and its speech. On information and belief, these nonconsensual deductions will continue until September 2020.

## CLASS ACTION ALLEGATIONS

26. Plaintiffs reallege and incorporate by reference the paragraphs set forth above.

27. Plaintiffs bring this case on their own behalf and on behalf of others similarly situated, and ask this Court to certify two classes: First, Plaintiffs seek the certification, under Federal Rule of Civil Procedure 23(b)(1)(A), (b)(1)(B), and (b)(2), of a "Class" of all employees who are or were subject to Defendants' August escape period. Second, Plaintiffs seek the certification, under Rules 23(b)(2) and (b)(3), of a "Revocation Class" that consists of all employees from whom, at any time after June 27, 2018, Defendants deducted or collected union dues or fees after receiving notification from the individual that he or she did not consent to paying union dues or fees.

28. On information and belief, the vast majority of the roughly 24,000 employees who are annually subject to the Board and CTU's collective bargaining agreement also are subject to the Defendants' August escape period restriction on exercising their First Amendment rights. The number of Class members makes joinder

of the individual Class members impractical.

29. On information and belief, Defendants deducted or collected union dues or fees, and will continue to deduct and collect union dues or fees, from employees who provide notification that they do not consent to paying union dues or fees outside of the August escape period, rendering joinder of individual Revocation Class members impractical.

30. There are questions of fact and law common to all Class and Revocation Class members. Factually, all are subject to the August escape period. The dispositive question of law for Count I is the same for Plaintiffs, Class, and Revocation Class members: is the Defendants' August escape period restriction facially constitutional under the First Amendment?

31. There are other questions of fact and law common to all Revocation Class members. Factually, all had union dues seized from their wages by the Defendants after they provided notice that they did not consent to paying union dues or fees. The dispositive question of law for Count II is the same for Plaintiffs and Revocation Class members: do or did these nonconsensual dues seizures violate their rights under the First Amendment?

32. Plaintiffs' claims are typical of Class members' and Revocation Class members' claims under Count I because all concern whether the Defendants' August escape period restriction facially violate their First Amendment rights. Plaintiffs' claims are typical of Revocation Class members' claims under Count II because all concern whether the Defendants' seizure of union dues or fees from their wages after they provided notice of their objection violates or violated their First Amendment rights.

33. Plaintiffs will adequately represent the interests of the proposed classes, and have no interests antagonistic to the class.

34. A class action by Class members can be maintained under Rule 23(b)(1)(A) because separate actions by Class members concerning the constitutionality of Defendants' August escape period could risk inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

35. A class action by Class members can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of Defendants' August escape period will as a practical matter, resolve the interests of all Class members or substantially impair or impede their ability to exercise their First Amendment rights.

36. A class action by Class members and Revocation Class members can be maintained under Rule 23(b)(2) because Defendants, by maintaining and enforcing their August escape period restriction on employees' exercise of their First Amendment rights, have acted or refused to act on grounds that apply generally to members of the Class and Revocation Class, so that final injunctive or declaratory relief is appropriate for the Class and Revocation Class as a whole.

37. A class action by Revocation Class members can be maintained under Rule 23(b)(2) because Defendants, by deducting and collecting union dues or fees from Revocation Class members' wages without their consent, have acted or refused to act on grounds that apply generally to members of the Revocation Class, so that final injunctive or declaratory relief is appropriate for the Revocation Class as a whole.

38. A class action by Revocation Class members can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint

predominate over any questions affecting only individual Revocation Class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all Revocation Class members are subjected to the same violation of their constitutional rights—but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions. The amount of the unauthorized deductions taken from Plaintiffs and class members is known to the defendant.

## CAUSES OF ACTION

39. Plaintiffs reallege and incorporate by reference the paragraphs set forth above.

40. Defendants act jointly and under color of state law, including Section 11.1 of the IELRA, by maintaining and enforcing Section 1-6 of the CBAs, by maintaining and enforcing their August escape period, and by deducting and collecting union dues from employees' wages.

41. The Board's dues deduction policy, which includes the August escape period, is both: (a) an express policy of the Board under Section 1-6 of the CBAs and the Board's and CTU's dues deduction form(s); and (b) a well-settled and permanent practice or custom for the same reasons and because the Board systematically enforces its dues deduction policy with respect to roughly 24,000 employees annually. The Board's dues deduction policy, which includes the August escape period, also is enforced by persons with final policymaking authority—the President of the Board, who executed the CBAs, and by persons at the Board who control payroll deduction policies.

42. In *Janus*, the Supreme Court held it violates the First Amendment for the government to deduct payments for a union from employees' wages without their consent. 138 S. Ct. at 2486. The Court also held that, to be effective, an individual's consent to pay union dues must meet the criteria for a waiver of First Amendment rights. *Id*.

43. A valid waiver of First Amendment rights requires clear and compelling evidence that the putative waiver was voluntary, knowing, and intelligent and that enforcement of the waiver is not against public policy. Defendants bear the burden of proving that these criteria are satisfied.

44. Defendants cannot prove that Plaintiffs, Class, nor Revocation Class members voluntarily, knowingly, and intelligently waived their First Amendment rights not to subsidize CTU's speech because, among other reasons, Defendants' dues deduction form(s) do not: (i) notify employees that they have a First Amendment right not to financially support CTU and its speech or (ii) state that the signatory employee is agreeing to waive that right.

45. Defendants' maintenance and enforcement of their August escape period is against public policy because it significantly abridges employees' First Amendment rights by compelling employees who do not want to subsidize CTU and its speech to subsidize CTU and its speech as a condition of their employment for up to a year. No countervailing public interest justifies this significant abridgment of employees' First Amendment rights.

## Count I

### (The August Escape Period Violates the First Amendment)

46. Defendants' August escape period compels employees who do not want to subsidize CTU and its speech to subsidize CTU and its speech as a condition of their employment unless they provide a notice of objection in August and until September 1st of each year.

47. Defendants' maintenance and enforcement of their August escape period restricts Plaintiffs, Class members, and Revocation Class members of their First Amendment rights to stop subsidizing CTU and its speech, and thus deprives them of their First Amendment right to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

48. Plaintiffs, Class Members, and Revocation Class Members are suffering the irreparable harm and injury inherent in a violation of their First Amendment rights, for which there is no adequate remedy at law.

## Count II

### (Nonconsensual Dues Deductions Violate the First Amendment)

49. Defendants, by deducting and collecting union dues or fees from Plaintiffs and Revocation Class over their objections, are depriving Plaintiffs and Revocation Class members of their First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

50. Plaintiffs and Revocation Class Members are suffering the irreparable harm

and injury inherent in a violation of their First Amendment rights, for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs request that this Court:

A. Issue a declaratory judgment that Defendants violate the First Amendment, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, by: (1) maintaining and enforcing their August escape period restriction against Plaintiffs, Class Members, and Revocation Class Members; and (2) enforcing Section 1-6 of the 2019–24 CBA or otherwise deducting union dues or fees from Plaintiffs and Revocation Class members without clear and compelling evidence that they waived their First Amendment right to refrain from subsidizing CTU and its speech.

B. Issue a declaratory judgment that Section 11.1 of the IELRA, 115 ILCS 5/11, is unconstitutional under the First Amendment, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, to the extent it authorizes: (1) restrictions on employees' exercise of their First Amendment rights to stop subsidizing a union and its speech that are identical, similar, or more restrictive than Defendants' August escape period restriction, and (2) the deduction of union dues or fees from employees' wages without clear and compelling evidence that they knowingly, intelligently, and voluntarily waived their First Amendment rights.

C. Permanently enjoin Defendants, along with affiliates, agents, and any other person or entity in active concert or participation with them, from engaging in the conduct that Plaintiffs request this Court declare unconstitutional.

D.  Award equitable relief that requires the Defendants to provide Plaintiffs, Class members, and Revocation Class members with written notice that the August escape period restriction is unconstitutional and unenforceable, that they have the right to stop the deduction and collection of union dues or fees from them at any time, and an opportunity to retroactively exercise that right;

E.  Award compensatory damages to Plaintiffs and Revocation Class Members, or alternatively nominal damages;

G. Award Plaintiffs their costs and reasonable attorneys' fees under the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988; and

H.  Grant other and additional relief as the Court may deem just and proper.

Dated:   May 4, 2020.

Respectfully submitted,

/s/ **JOSEPH A. MORRIS**
_____

JOSEPH A. MORRIS
*One of Counsel for Plaintiffs*

JOSEPH A. MORRIS
MORRIS & DE LA ROSA
6171 North Sheridan Road
Suite 312
Chicago, Illinois 60660
Telephone:  (312) 927-4680
E-Mail:  MDLRusuk@aol.com
Illinois Attorney No. 1963475

WILLIAM L. MESSENGER
FRANK D. GARRISON
(Admission to practice to be filed)
NATIONAL RIGHT TO WORK
    LEGAL DEFENSE FOUNDATION
8001 Braddock Road
Suite 600
Springfield, Virginia 22160
Telephone:  (703) 321-8510
E-Mail:  wlm@nrtw.org
            fdg@nrtw.org

*Counsel for Plaintiffs*