IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOANNE TROESCH and IFEOMA NKEMDI, on behalf of themselves and the putative class,<br><br>   Plaintiffs,<br><br> v.<br><br>CHICAGO TEACHERS UNION, LOCAL UNION NO. 1, AMERICAN FEDERATION OF TEACHERS, and THE BOARD OF EDUCATION OF THE CITY OF CHICAGO,<br><br>   Defendants. | No. 20 C 2682<br><br>Judge John Z. Lee |

**MEMORANDUM OPINION AND ORDER**

Joanne Troesch and Ifeoma Nkemdi, on behalf of themselves and a putative class of similarly situated employees (collectively, "Plaintiffs"), allege that the Chicago Teachers Union ("CTU") and the Chicago Board of Education ("the Board") (collectively, "Defendants") violated their First Amendment rights under *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), by continuing to enforce their signed agreements to pay union dues until the annual August window for revoking their dues authorizations after they resigned their memberships in CTU in October 2019. Defendants have moved to dismiss the complaint with prejudice under Rule 12(b)(6), arguing primarily that Plaintiffs fails to state a First Amendment violation. For the following reasons, the motions are granted. This case is terminated.

I. **Background**[1]

The Illinois Educational Labor and Relations Act (the "IELRA") requires public-sector educational employers like the Board, which oversees Chicago Public Schools ("CPS"), to bargain over and enter into collective bargaining agreements ("CBAs") with unions that have been chosen by a majority of employees in a bargaining unit to serve as the employees' exclusive representative. *See* 115 Ill. Comp. Stat. 5/3, 5/7, 5/10; *About*, Chicago Board of Education, https://www.cpsboe.org /about (last accessed Nov. 23, 2020).[2] For employees of CPS, that exclusive bargaining representative is CTU, an affiliate of the Illinois Federation of Teachers. Compl. ¶ 11, ECF No. 2.

Plaintiffs, along with roughly 24,000 other teachers and school personnel, are employees of the Board, and their employment terms are and have been governed by a series of CBAs that CTU has negotiated with the Board over the years. *Id.* ¶¶ 10–11. The current CBA is effective from July 1, 2019, through June 30, 2024, while the prior CBA was effective from July 1, 2015, through June 30, 2019. *Id.* ¶ 10.

Both CBAs contain an identical Section 1-6, entitled "Dues Checkoff." This section provides that the Board "shall deduct from the pay of each bargaining unit employee from whom it receives an authorization to do so the required amount of fees

---

[1] When considering a motion to dismiss, the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

[2] The Court may take judicial notice over these and other relevant "matters of public record," that the complaint does not address. *See Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977).

for the payment of UNION dues." *Id.* ¶ 12. Section 1-6 further states that any such "bargaining unit employee may terminate the dues check off," meaning the dues authorization, "during the month of August by submitting written notice to the BOARD and the Union." *Id.*

The authorization to which Section 1-6 of the CBAs refers is part of CTU's membership agreement, which employees may sign if they so choose. *See* Pls.' Ex. A, Chicago Teachers Union Membership Applications of J. Troesch and I. Nkemdi ("Membership Agreements") at 2–3, ECF No. 2-1. While becoming a member of CTU "is not a condition of . . . employment," *see id.*, doing so carries numerous benefits, including the ability to vote on contract demands, contract proposals, strike proposals, and union elections; to submit contract proposals; to influence political endorsements; and to obtain legal representation in the event of a dismissal proceeding. *See* Pls.' Ex. C, 11/15/19 Letters from Union to J. Troesch and I. Nkemdi ("Resignation Acknowledgement Letters") at 2–3, ECF No. 2-1. Members also provide important financial support for CTU's bargaining efforts. *See id.*

In September 2017, Plaintiffs each signed agreements to become members of CTU. Compl. ¶ 14; *see* Membership Agreements at 2–3. In so doing, they each signed a "Membership" provision stating that their membership in CTU "shall be continuous unless I notify CTU President in writing of my resignation." Compl. ¶ 14; *see* Membership Agreements at 2–3. They also each subscribed to the aforementioned "Dues Authorization" section:

> During my employment, I voluntarily authorize and direct my Employer to deduct from my pay each period, regardless of whether I am or remain

3

> a member of the Union, an amount equal to the dues and assessments certified by the Union, and to remit such amount monthly to the Union. This authorization and direction shall become revocable by sending written notice to the Union by United States Postal Service postmarked between August 1 and August 31.

*Id.*; *see* Compl. ¶ 16. In other words, Plaintiffs agreed to restrict to the month of August their ability to revoke their authorizations to have union dues deducted from their pay, even if they resigned from CTU during another part of the year.

In October 2019, after becoming aware of the Supreme Court's 2018 decision in *Janus*, Plaintiffs each sent letters to the Board and CTU resigning their membership in CTU effective immediately. *Id.* ¶ 21; *see* Pls.' Ex. B, 10/18/19 Resignation Letters from J. Troesch to Board and Union and 10/22/19 Resignation Letters from I. Nkemdi to Board and Union ("Resignation Letters") at 2–5, ECF No. 2-1. The letters, which were substantively identical, also sought to invoke Plaintiffs' purported rights under *Janus* to immediately revoke their dues authorizations, asserting that the revocability restrictions of their membership agreements had been signed "under a framework *Janus* declared unconstitutional." *Id.*

CTU responded to each of Plaintiffs' letters the following month. Compl. ¶ 23; *see* Pls.' Ex. C, 11/15/19 Resignation Acknowledgement Letters from Union to J. Troesch and I. Nkemdi at 2–4, ECF No. 2-1. CTU's response accepted Plaintiffs' resignations, but stated that their dues authorizations would remain valid until September 1, 2020—*i.e.*, after the August 2020 revocation period—pursuant to their membership agreements. Compl. ¶ 23; *see* Resignation Acknowledgement Letters at

4

2, 4. And the Board continue to deduct dues from their wages until September 1, 2020. *Id.* ¶ 25.

Plaintiffs filed this case in May 2020. Their complaint asserts two counts under 42 U.S.C. § 1983. Count I claims that Defendants violated Plaintiffs' First Amendment rights by enforcing the revocability restrictions contained in the dues authorizations, thereby compelling them to continue paying union dues through August 2020. Compl. ¶¶ 46–48. Relatedly, Count II claims that Defendants violated Plaintiffs' First Amendment rights by continuing to deduct dues from their wages, pursuant to those authorizations, even after they had resigned from CTU and objected to such deductions in October 2019. *Id.* ¶¶ 49–50. Plaintiffs seek a variety of relief for these alleged deprivations, including declaratory relief that the revocability restrictions, together with Section 1-6 of the current and prior CBAs, are unconstitutional under the First Amendment.[3] *See id.* at 13–14.

Defendants have moved to dismiss the entire complaint with prejudice under Rule 12(b)(6). *See* Def. Board's Mot. Dismiss ("Board's Mot."), ECF No. 25; Def. Union's Mot. Dismiss, ECF No. 26.

---

[3] Plaintiffs also seek a declaration that 115 Ill. Comp. Stat. 5/11.1, which authorizes restrictions on employees' ability to revoke their dues authorizations, Compl. ¶ 9, violates the First Amendment, *id.* at 13. Defendants counter that Plaintiffs lack standing to challenge the constitutionality of this provision because it did not become effective until December 20, 2019, about two months after they resigned from CTU. *See* 115 Ill. Comp. Stat. 5/11.1. But because, as the Court explains, Plaintiffs fail to state a violation of the First Amendment in the first place, the Court need not assess whether they could seek relief as to this provision.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Moreover, while courts "must take all of the factual allegations in the complaint as true" for purposes of a motion to dismiss, they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim on which relief can be granted. *Iqbal*, 556 U.S. at 678.

## III. Analysis

Defendants raise two arguments in their motion to dismiss. Their principal argument is that the complaint fails to state any violation of the First Amendment, under *Janus* or otherwise. *See* Board's Mot. at 8–14; Def. Union's Mem. Supp. Mot.

6


Dismiss ("Union's Mem.") at 6–11, ECF No. 27. They also argue that the complaint fails to render either of them liable under § 1983. *See* Board's Mot. at 5–8; Union's Mem. at 11–14. For the reasons below, the Court concludes that Plaintiffs' First Amendment claims are foreclosed by controlling Supreme Court precedent, and the complaint is dismissed with prejudice.[4]

Both of Plaintiffs' First Amendment claims are based upon the same grievance: Defendants continued to deduct union dues from Plaintiffs' paychecks, through August 2020, even after they had resigned as members in CTU in October 2019. *See* Compl. ¶¶ 46–50. In Plaintiffs' view, the Supreme Court's ruling in n *Janus* entitled them to stop paying dues when they resigned in October 2019, notwithstanding the expressed terms of their agreements. *See* Membership Agreements at 2–3.

Plaintiffs' theory, however, finds no support in *Janus*. There, public sector employees brought a challenge to an Illinois law that "forced [them] to subsidize a

---

[4]  In light of the doctrine of constitutional avoidance, it is worth noting that Defendants' non-constitutional arguments lack merit. Regarding § 1983, the Board argues that Plaintiffs fail to identify an "express municipal policy" or "widespread practice constituting a custom or usage" that caused their asserted injuries, as required to trigger municipal liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), *see Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir 2002); while CTU argues that Plaintiffs fail to identify a sufficient nexus between its conduct as a private actor and the conduct of a state actor, *see Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). But the Board's position that Section 1-6 of the current and prior CBAs, in which it agreed to enforce dues authorizations outside of the annual August revocation period even where an employee has since resigned from CTU, does not constitute an express policy is unpersuasive. As for CTU, it overlooks that the Seventh Circuit has found state action where, as here, a union is "a joint participant" with state actors in an arrangement to have union fees deducted from employees' paychecks. *See Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 942 F.3d 352, 361 (7th Cir. 2019), *cert. docketed*, No. 19-1104 (U.S. Mar. 10, 2020).

union, even if they ch[o]se not to join and strongly object[ed] to the positions CTU t[ook] in collective bargaining and related activities." 138 S. Ct. at 2459–60. The Court held that such an "agency-fee" arrangement—so called because employees who declined to join CTU still had to pay an "agency" or fair-share fee[5]—violated the First Amendment rights of nonmember employees "by compelling them to subsidize private speech on matters of substantial public concern," overruling *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). *Id.* at 2460. In so doing, the Court reasoned that extracting fees from employees who had given "[n]o form of . . . consent" to subsidize union speech, *id.* at 2486, triggered at least intermediate scrutiny, which the challenged charges failed to meet. *See id.* at 2465–69, 2474–78.

By contrast, *Janus* treated *consenting* employees quite differently. The Supreme Court observed that agency fees and other payments to the union may not "be deducted from a nonmember's wages . . . *unless the employee affirmatively consents to pay*." *Id.* at 2486 (emphasis added). "By agreeing to pay," the Court explained, "nonmembers are waiving their First Amendment rights . . . ." *Id.* The Court further explained that, "[t]o be effective, the waiver must be freely given and shown by clear and compelling evidence." *Id.* (cleaned up). In other words, *Janus* excluded from its holding those nonmember employees who "clearly and affirmatively consent before any money is taken from them." *See id.*

*Janus*, thus, did not disturb the Supreme Court's conclusion in *Cohen v. Cowles Media Co.* that "[t]he First Amendment does not confer . . . a constitutional right to

---

[5] The 2015–2019 CBA between the Board and CTU contained a "fair share" clause as well, but Defendants stopped enforcing it once *Janus* was decided. Compl. ¶ 13.

8

disregard promises that would otherwise be enforced under state law." 501 U.S. 663, 671 (1991). There, an informant challenged the state supreme court's holding that the First Amendment barred enforcement of a newspaper's promise to keep his identity confidential in publishing unflattering stories about a candidate in the 1982 state gubernatorial election. *Id.* at 665–67. The Supreme Court reversed, holding that "[t]he First Amendment does not forbid" the doctrine of promissory estoppel from applying to the press. *Id.* at 670. Any inhibition on "truthful reporting," the Court reasoned, was "no more than the incidental, and constitutionally insignificant, consequence of . . . generally applicable law that requires those who make certain kinds of promises to keep them." *Id.* at 671–72.

The Court need look no further than *Janus* and *Cohen* to dispose of Plaintiffs' First Amendment claims. Indeed, courts have universally recognized that *Janus* does not articulate a path "to escape the terms" of an agreement to pay union dues, which remain binding under *Cohen* even where an employee has resigned her membership in CTU. *Fisk v. Inslee*, 759 F. App'x 632, 633–34 (9th Cir. 2019); *accord Fischer v. Governor of N.J.*, --- F. App'x ----, Nos. 19-3914 and 19-3995, 2021 WL 141609, at \*8 (3d Cir. Jan. 15, 2021) ("Because *Janus* does not abrogate or supersede Plaintiffs' contractual obligations, which arise out of longstanding, commonlaw principles of 'general applicability,' *Janus* does not give Plaintiffs the right to terminate their commitments to pay union dues unless and until those commitments expire under the plain terms of their membership agreements." (quoting *Cohen*, 501 U.S. 670)); *Belgau v. Inslee*, 975 F.3d 940, 950 (9th Cir. 2020) ("These facts speak to a contractual

obligation, not a First Amendment violation."), *cert. docketed*, No. 20-1120 (U.S. Feb. 16, 2021); *Oliver v. Serv. Emps. Int'l Union Local 668*, 830 F. App'x 76, 79 (3d Cir. 2020) ("It is difficult to imagine language that would be more clear and compelling as evidence of consent to . . . pay union dues."); *Loescher v. Minn. Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320*, 441 F. Supp. 3d 762, 773 (D. Minn. 2020) ("[Plaintiff's] reliance on Janus is misplaced and does not establish a cognizable claim to relief."), *appeal dismissed*, No. 20-1540, 2020 WL 5525220 (8th Cir. May 15, 2020); *Hendrickson v. AFSCME Council 18*, 434 F. Supp. 3d 1014, 1023–24 (D.N.M. Jan. 22, 2020) ("[Plaintiff's] choice was voluntary, and he may not void his choice after *Janus*."), *appeal docketed*, No. 20-2018 (10th Cir. Feb. 21, 2020); *Bennett v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31, AFL-CIO*, --- F. Supp. 3d. ----, No. 4:19 C 4087, 2020 WL 1549603, at *4 (C.D. Ill. Mar. 31, 2020) ("Plaintiff's obligation to pay union dues pursuant to the 2017 Card remains enforceable despite the new constitutional right identified in *Janus*."), *appeal docketed*, No. 20-1621 (7th Cir. Apr. 15, 2020); *Allen v. Ohio Civil Serv. Emps. Ass'n AFSCME, Local 11*, No. 2:19 C 3709, 2020 WL 1322051, at *8 (S.D. Ohio Mar. 20, 2020) ("Because Plaintiffs opted to join and pay dues to CTU, the properly framed right at issue here is not whether Plaintiffs have the right to not subsidize OCSEA's speech but whether they have a right to tear up those contracts."), *appeal dismissed*, No. 20-3440, 2020 WL 4194952 (6th Cir. July 20, 2020); *see also LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 288 (3d Cir. 2021) ("[W]e decline to find any First Amendment violation under *Janus* for an

employer's or union's failure to promptly process a member's resignation notice and terminate the associated dues deductions.").

The same result follows here. "By agreeing to pay" dues until they could revoked their dues authorizations during the annual August revocation period, regardless of whether they remained members of CTU, Plaintiffs waived their rights not to subsidize CTU's speech. *See Janus*, 138 S. Ct. at 2486. These waivers were "freely given," *see id.*, as Plaintiffs each attested, *see* Membership Agreements at 2–3 ("I understand that signing this card is not a condition of my employment."). And it is indeed "difficult to imagine" clearer and more compelling evidence of these waivers than their own signed agreements. *See Oliver*, 2020 WL 5946727, at *2.

Plaintiffs' arguments to the contrary are unavailing. They latch onto *Janus*'s language that "nonmembers" cannot be compelled to pay union fees, *see, e.g.*, 138 S. Ct. at 2467, but ignore the Court's exclusion of employees who "affirmatively consent[] to pay," *id.* at 2486. They contend that clear and compelling evidence of consent is absent here, but fail to explain how their agreements furnish anything less. Indeed, Plaintiffs do not identify "even a whiff of compulsion" that led them to sign the agreements in the first place. *See Belgau*, 975 F.3d at 950. They suggest that their consent was terminated by their objections to the deductions when they resigned their union memberships, but point to nothing in *Janus* (or any other case) allowing them to "renege on their promise[s]" to pay dues until the following August revocation period. *See Belgau*, 975 F.3d at 950. Nor do Plaintiffs contend that their promises to pay dues are unenforceable under state law. *See Cohen*, 501 U.S. at 671;

11

*cf. Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 260 (Ill. 2006) ("One party to a contract may not unilaterally modify a contract term . . . .").

Plaintiffs also argue that their consent was not "voluntary, knowing, and intelligent" because, while they agreed to the terms of the membership agreements, they did not specifically agree to give up their rights under *Janus* not to subsidize union speech. *See* Pls.' Resp. Opp'n Mots. Dismiss at 10–11, ECF No. 34 (quoting *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1094 (3d Cir. 1988)). But, this view of the law is much too myopic. As *Janus* makes clear, Plaintiffs "waiv[ed] their First Amendment rights" simply "[b]y agreeing to pay." *See* 138 S. Ct. at 2486. And *Janus* "had no effect" on employees' pre-existing obligations "to pay fees pursuant to voluntarily signed membership agreements." *Bennett*, 2020 WL 1549603, at *3. As a result, Plaintiffs' prior dues agreements are not invalidated by that mere "change[] in intervening law." *See Smith v. Bieker*, No. 18 C 05472, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019) (citing *Brady v. United States*, 397 U.S. 742, 757 (1970)), *appeal docketed*, No. 19-16381 (9th Cir. July 12, 2019).

In sum, even when all of the well-pleaded factual allegations in the complaint are taken to be true, Plaintiffs' legal theory finds no support in First Amendment jurisprudence. The complaint is dismissed, and because "it is clear that any amendment would be futile," the dismissal is with prejudice. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

## IV. <u>Conclusion</u>

For the forgoing reasons, Defendants' motions to dismiss the complaint with prejudice are granted. This case is terminated.

**IT IS SO ORDERED.**  ENTERED: 2/25/21

_____

**John Z. Lee
United States District Judge**